CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
MAY 15 2013
JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| CLAYTON S. WATERS, | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO. 4:12CV00023 |
| | ) | |
| | ) | |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| | ) | |
| | ) | |
| CAROLYN W. COLVIN,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | By:  B. Waugh Crigler |
| Defendant. | ) | U. S. Magistrate Judge |

This challenge to a final decision of the Commissioner which denied plaintiff's July 21,

2008 protectively-filed application for supplemental security income under the Social Security

Act ("Act"), as amended, 42 U.S.C. § 1381, et seq., is before this court under authority of 28

U.S.C. § 636(b)(1)(B) to render to the presiding District Judge a report setting forth appropriate

findings, conclusions, and recommendations for the disposition of the case.  The questions

presented are whether the Commissioner's final decision is supported by substantial evidence, or

whether there is good cause to remand for further proceedings.  42 U.S.C. § 405(g).  For the

reasons that follow, the undersigned will RECOMMEND that an Order enter DENYING the

plaintiff's motion for summary judgment, GRANTING the Commissioner's motion for summary

judgment, and DISMISSING this case from the docket of the court.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February
14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin
hereby is substituted for Michael J. Astrue as the defendant in this action.

In a decision dated July 26, 2010, an Administrative Law Judge ("Law Judge") found that plaintiff had not engaged in substantial gainful activity since his application date, July 21, 2008.[2] [3] (R. 15.) The Law Judge determined plaintiff's vision impairment with a hole in the macula, chronic obstructive pulmonary disease, hypothyroidism, social phobia, cannabis abuse, and alcohol abuse in partial remission were severe impairments.[4] (R. 15.) He also concluded that, through the date of the hearing, plaintiff did not suffer an impairment or combination of impairments which met or equaled a listed impairment. (R. 15-16.)

Further, the Law Judge found that plaintiff possessed the residual functional capacity ("RFC") to perform a range of medium work with limitations; specifically that: (1) plaintiff was moderately limited in the ability to understand and remember detailed instructions; (2) moderately limited in his ability to carry out detailed instructions, to maintain attention and concentration for extended periods, to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (3) moderately limited in his ability to work in coordination with or proximity to others without being distracted by them, and could complete a normal work day and work week without interruptions from psychologically based symptoms at a consistent pace without an unreasonable number and length of rest periods; (4) moderately limited in his ability to interact appropriately with the general public; (5) moderately limited in his ability to accept instructions and respond appropriately to criticism from

---

[2] Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A) (2004).

[3] Substantial gainful activity is "work activity that involves doing significant physical or mental activities," and it is typically determined by the amount of a claimant's earnings. *See* 20 C.F.R. § 404.1574.

[4] A severe impairment is any impairment or combination of impairments which significantly limits a claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c).

supervisors; and (6) moderately limited in his ability to respond appropriately to changes in the work setting. (R. 16-30.) The Law Judge found that plaintiff was not significantly limited in other subcategories of mental function, in that he could understand and remember short/simple instructions and could maintain attention and concentration for two hours at a time as required for the performance of simple routine and repetitive tasks. *Id.* He also found that plaintiff likely would have some social limitations, given reports that he is easily agitated by others, and likely would best perform in settings with minimal social demands. *Id.* The Law Judge found that plaintiff appeared capable of responding appropriately to changes in the work setting within the context of a stable, low-stress work assignment. *Id.* In summary, he found that plaintiff appeared to retain the mental capacity for simple, routine, and repetitive tasks in a low-stress setting with minimal social demands. *Id.*

The Law Judge relied on portions of the testimony of Gerald K. Wells, Ph.D., CRC, a vocational expert ("VE"), which were in response to questions premised on the Law Judge's RFC finding. (R. 30-32, 49-55.) Based on this testimony, the Law Judge determined that plaintiff had no past relevant work. (R. 30.) However, he determined that there were other jobs that existed in significant numbers in the local and national economy which plaintiff could perform: specifically, a light janitorial worker, laundry sorter, and restaurant bus person. (R. 31.) Accordingly, the Law Judge found that plaintiff was not disabled. (R. 32.)

Plaintiff appealed the Law Judge's July 26, 2010 decision to the Appeals Council. (R. 1-8.) In its June 12, 2012 notice, the Council found no basis to review the Law Judge's decision, denied review, and adopted the Law Judge's decision as the final decision of the Commissioner. (R. 1-2.) This action ensued and briefs were filed.

The Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs, and medical findings to determine the functional capacity of the claimant. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Shively v. Heckler*, 739 F.2d 987 (4th Cir. 1984). The regulations grant some latitude to the Commissioner in resolving conflicts or inconsistencies in the evidence, which the court is to review for clear error or lack of substantial evidentiary support. *Craig v. Chater*, 76 F.3d 585, 589-590 (4th Cir. 1996). In all, if the Commissioner's resolution of the conflicts in the evidence is supported by substantial evidence, the court is to affirm the Commissioner's final decision. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence is defined as evidence, "which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than preponderance." *Id.* at 642. When the Appeals Council considers additional evidence offered for the first time on administrative appeal and denies review, courts must consider the record as a whole, including the new evidence, in determining whether the Commissioner's final decision is supported by substantial evidence. *Meyers v. Astrue*, 662 F.3d 700, 707 (4th Cir. 2011); *Wilkins v. Secretary*, 953 F.2d 93, 96 (4th Cir. 1991).

In his brief in support of his motion for summary judgment, plaintiff argues that the Law Judge erred by "completely dismissing" the opinion of Carol McMorrow, PA-C, "solely because she is a physician's assistant." (Dkt. No. 12, at 15-18.) The undersigned will address this challenge below.

Under the regulations, a physician's assistant ("PA") is not regarded as an "acceptable medical source," whose evidence, therefore, cannot be relied on to establish that a claimant suffers a medically determinable impairment. 20 C.F.R. § 404.1513(a). By the same token, PA's are "other sources," whose evidence may be considered in determining the severity of a

claimant's impairments and their effect on the claimant's ability to perform work-related activities. 20 C.F.R. § 404.1513(d).

Plaintiff contention that the Law Judge completely dismissed McMorrow's opinion on the sole basis that she is a physician's assistant is not entirely accurate. It is accurate to the extent that the Law Judge followed the regulations and did not consider her an acceptable medical source. (R. 30.) On the other hand, the Law Judge did consider her records relating to, and her opinion on, plaintiff's functional limitations. (R. 24-27, 29-30.) However, he assigned little or no weight to McMorrow's opinion on the basis that "her assessment of the [plaintiff's] work-related limitations is inconsistent with the other medical evidence of record and is unsupported by the physical medical findings." (R. 30.) Accordingly, the question becomes whether this determination is supported by substantial evidence.

In her April 6, 2010 "Work Related Limitations Forms," McMorrow indicated that plaintiff could lift and/or carry only ten to fifteen pounds; could stand only for two to three hours of a day, needing the option to get up and walk around a few times per hour because of his decreased "trunk" range of motion and limp; could never balance, crouch, or crawl and was occasionally limited in all other postural activities; was limited in handling, fingering, and feeling as a result of carpel tunnel syndrome in his right arm; was limited in near acuity with 20/50 corrected vision; and had environmental restrictions concerning heights, machinery, and vibration. (R. 481-483.) Accordingly, she opined that plaintiff was only capable of sedentary work. (R. 484.) McMorrow also noted that plaintiff's work related activities would be impaired by social phobia and depression, though she did not specify how or to what extent. (R. 485.)

Notably, McMorrow does not suggest that plaintiff is disabled from all gainful activity as a result of his impairments, though her opinion would suggest that plaintiff is more physically

limited than the Law Judge found. While the record reflects that plaintiff suffers impairments which would produce functional limitations, there is substantial evidence supporting the Law Judge's finding that these functional limitations are not as a severe as plaintiff alleges or as McMorrow opines.

Plaintiff has received treatment for possible hip and spine impairments. In May 2008, imaging evidence of plaintiff's hip and spine showed no definite left hip arthritis and only mild disc space narrowing. (R. 272-273.) In June 2008, plaintiff complained of chronic back pain and left hip weakness. (R. 252.) On physical examination, he demonstrated minor weakness in his left hip with pain and was referred to an orthopedist. (R. 253.) Returning in July, plaintiff complained of difficulties in his use of his hip going back to a fall twelve years before. (R. 204.) He indicated that he was unable to flex his hip and had to manually lift his leg to get into a car, but he had no pain with ambulation or at rest. *Id.* On examination, plaintiff had symmetrical range of motion in his hips without pain, no anterior or lateral hip tenderness, and could ambulate normally. (R. 205.) However, he did suffer pain on active flexion and increased pain with resisted flexion, questionable weakness, and found it painful to hold his leg up against gravity. (R. 205.) X-rays of plaintiff's hip again were unremarkable and showed no signs of definite left hip arthritis. (R. 205-206.)

In September 2008, plaintiff again suffered some weakness in his hip, limitation and pain on flexion, and limitations and pain in active range of motion. (R. 351.) However, an MRI revealed no abnormalities and the treatment provider could not determine a cause of plaintiff's pain. (R. 351.) Moreover, plaintiff indicated that his pain did not really affect his life and reported no weaknesses. *Id.* Plaintiff complained again of "vertebral compression" and left hip pain and dysfunction in January 2009, noting that he had to lift his leg to get into a car. (R. 327.)

There is no evidence in the record that plaintiff complained of hip or back problems or sought treatment again until the end of 2009. Notably, plaintiff said that he suffered zero pain in July, August, and September of 2009. (R. 409, 419, 440.) In November, another X-Ray revealed no abnormalities other than continued scattered pelvic vascular calcification. (R. 473.) However, McMorrow diagnosed plaintiff with hip pain and requested that he receive a consultation for use of a cane. (R. 473, 480.) Plaintiff was provided a cane and some training by outpatient rehabilitative services at a walk-in clinic. (R. 473, 480.)

In December, plaintiff complained of chronic lower back pain and right hip pain starting in September 2009 "as cold weather set in." (R. 472.) Plaintiff pointed to a remote injury some thirty years prior from when he attempted to lift a tractor tire and ended up tearing "all the muscles off his bones" on his right side. (R. 472.) Plaintiff said that the pain in his hip was constant, limited his functioning, interfered with his sleep, and made it so he could barely get out of bed and was almost reduced to tears. (R. 473.) On examination, plaintiff indicated that his pain was an 8 out of 10, and he demonstrated a significantly antalgic gait from incorrect use of his cane. (R. 474.) Plaintiff had decreased trunk range of motion and strength with significantly decreased hamstring length. (R. 474-475.) Examination findings were otherwise unremarkable, and plaintiff was instructed to use ice to decrease the pain and inflammation and to follow a home exercise program to increase his strength, endurance, and flexibility. (R. 475.) In a final examination in March 2010, plaintiff indicated that his back still hurt, but he complained of no other symptoms or limitations and indicated that he suffered no pain at the time, as a result of which McMorrow did not include any limitations in her physical examination or assessment at that time. (R. 477-478.)

Plaintiff has been diagnosed with carpal tunnel syndrome, but it is not at all clear how limited he is by this impairment. Plaintiff did not complain of any symptoms from carpal tunnel syndrome until March 2010. Then, he claimed that he suffered episodic tingling and numbness in the first and third fingers of his right hand, indicating that it was a new problem. (R. 477.) On physical examination, plaintiff had positive Phalen's and Tinel's signs in his right hand, and McMorrow diagnosed plaintiff with carpal tunnel syndrome and prescribed the use of a trial wrist splint. (R. 477-478.) However, none of plaintiff's earlier medical records or function reports noted any limitations in his use of his hand (R. 123-138, 150-165.), and he acknowledged that his diagnosis was speculative and offered that he had never dropped anything with his right hand. (R. 45-48.)

Plaintiff also suffers from chronic obstructive pulmonary disorder ("COPD"). A May 2008 x-ray of plaintiff's chest revealed mild chronic bronchitis, though the technician indicated that the appearance could simply be a result of plaintiff's frequent smoking. (R. 271-272.) In June 2008, plaintiff's lungs were examined and found to have poor excursion but no wheezes, rales, or rhonchin, and he was diagnosed with COPD, for which he was instructed to stop smoking. (R. 253.) A separate examination in June revealed that plaintiff's "breath sounds clear throughout without any adventitious sounds." (R. 259.) In December 2008, plaintiff indicated that he had no desire at all to quit smoking or reduce his two pack-a-day habit. (R. 337.) Physical examination findings were normal, and he again was counseled to quit smoking. (R. 338.)

In January 2009, plaintiff complained of hemoptysis (coughing up blood), which resolved itself after three days; continued chronic cough; and exercise induced asthma. (R. 325.) Examination findings and chest x-rays revealed decreased breathing sounds and a pulmonary

nodule in the right hilum but otherwise normal findings, and plaintiff was again diagnosed with

COPD and "strongly encouraged" to quit smoking. (R. 327-330.) However, plaintiff again

stated that he had no desire to quit smoking and "never will." (R. 327.) Moreover, plaintiff had

no shortness of breath and stated that he did not believe he had any respiratory limitation. (R.

325.) Physical examination findings of plaintiff's lungs were normal in July and August 2009

and in March 2010. (R. 415, 440, 477.) Plaintiff complained of a cough every morning but

again refused to quit smoking. (R. 440, 478.) Plaintiff stated in March 2010 that he had

decreased his daily smoking for financial reasons and noted that his breathing had improved on

medication. (R. 477.)

Finally, plaintiff also suffers limitations in vision. In June and July 2008, plaintiff was

found to have a stage II macular hole in his right eye and a visually significant cataract. (R. 246,

260.) Plaintiff underwent retinal surgeries to correct the condition and a similar cataract in his

left eye. (R. 212, 267, 340-342, 443.) In August 2008, plaintiff was found to be doing well with

stable vision. (R. 201.) Moreover, plaintiff testified that his vision was better than it was as a

result of surgery, was "pretty good now," and that he could see "fairly well" with glasses.[5] (R.

45.)

---

[5] Plaintiff has also received treatment for hyperthyroidism and social
phobia/anxiety/depressive impairment. However, he has not alleged that the Law Judge erred in
his analysis of these impairments, the first of which McMorrow does not even mention in her
opinion. (R. 481-485.) Plaintiff's psychological impairments do impose functional limitations,
but there is conflict in the record as to how severe they are. Plaintiff's Global Assessment of
Functioning Scores have ranged from 50 in August 2008 (indicating severe limitations in social
and professional interactions) to 72 (indicating only transient symptoms) just two months later.
(R. 197-200, 286-290.) Plaintiff continued to appear anxious and complained of being nervous
around people (R. 342-344), but there is evidence he eventually improved somewhat on
medication (R. 408, 477). Plaintiff has not pointed to any evidence of record which would
suggest that the mental limitations found by the Law Judge in determining his RFC fail to
adequately account for his impairments or are not supported by substantial evidence.

The record evidence substantially supports a conclusion that plaintiff's impairments have not caused severe functional limitations. His vision greatly improved with surgery, and he no longer alleges any specific limitations resulting from his eye impairment. He rarely has sought treatment for either his hip or back pain, or carpal tunnel syndrome, and while he has been prescribed the use of a cane and wrist splint, the objective findings of record can be interpreted as unremarkable with few observed functional limitations.[6] While plaintiff does suffer from COPD, there is substantial evidence to support the conclusion that it does not produce disabling limitations, and it is clear he has continued to be non-compliant with the recommendations of his treatment providers to stop smoking.[7] Accordingly, there is substantial evidence supporting the Law Judge's finding that McMorrow's opinion is inconsistent with the record and not entitled to any weight.

For all these reasons, it is RECOMMENDED that an Order enter DENYING plaintiff's motion for summary judgment, GRANTING the Commissioner's motion for summary judgment, and DISMISSING this case from the docket of the court.

The Clerk is directed to immediately transmit the record in this case to the presiding United States District Judge. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the

---

[6] Again, the undersigned points out that McMorrow is not an acceptable medical source. Thus, the Commissioner need not assign any weight to her diagnoses. 20 C.F.R. § 404.1513(a), (d).

[7] Plaintiff revealed he has spent up to $400 dollars a month on marijuana and smoked up to two packs a day of cigarettes while applying for benefits. (R. 325, 431.) The failure to follow the medical recommendations of a treatment provider, including those to cease smoking, provide a substantial evidentiary basis to discount his credibility. *See Hunter v. Sullivan*, 993 F.2d 31, 36 (4th Cir. 1992) (failure to follow a prescribed treatment plan can undermine credibility); *Mouser v. Astrue*, 545 F.3d 634, 638 (8th Cir. 2008) (Law Judge appropriately considered claimant's failure to stop smoking in his credibility determination when claimant suffered pulmonary impairments).

undersigned not specifically objected to within the period prescribed by law may become

conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. §

636(b)(l)(C) as to factual recitations or findings as well as to the conclusions reached by the

undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk

is directed to transmit a certified copy of this Report and Recommendation to all counsel of

record.

ENTERED: _____

U.S. Magistrate Judge

_____5/15/13_____

Date